United States District Court
Southern District of Texas
**ENTERED**
March 24, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOMENTUM GLOBAL FZ LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-04659 |
| | § | |
| KAIROS GLOBAL TRADE, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is the Motion to Dismiss filed by Defendants Kamil Aydin ("Aydin") and Kairos Global Trade, LLC ("Kairos") (collectively, "Defendants"). (Doc. No. 20). Plaintiff Momentum Global FZ LLC ("Momentum" or "Plaintiff") filed a response. (Doc. No. 23). Having reviewed these documents, the record, and the applicable law, the Court hereby CONDITIONALLY GRANTS Defendants' Motion to Dismiss. (Doc. No. 15).

### BACKGROUND

The facts described herein are alleged in Plaintiff's Complaint and taken as true for purposes of the Motion to Dismiss.

Momentum is a limited liability company that specializes in the supply of polymers. (Doc. No. 16 at 3). Momentum alleges that in 2024, it entered into a business agreement with Defendant Kairos whereby Kairos "assumed responsibility for the supply and shipment of goods," while Momentum "provided financing and managed logistical operations and the sale of the goods." (*Id.*).

In March of 2024, Momentum claims that the parties entered into an agreement for the shipment of "PP, HDPE, and LLDPE Resins" to one of Momentum's customers. (*Id.*). Pursuant to this agreement, Momentum alleges that it received a pro forma invoice from Kairos for $97,200.00 and it then sent payments to Kairos in that amount (*Id.*). Momentum contends that "[a]lthough Defendants assured Plaintiff that the goods were en route," after six weeks, Defendants claimed that "errors on the part of the supplier" had resulted in the goods not being shipped to Momentum's customer. (*Id.*). As a result, Momentum maintains that it was forced to refund advance payments to the customer, "resulting in reputational damage." (*Id.*).

Momentum asserts that, "[d]espite repeated requests," Defendants have failed to return the $97,200.00 in funds, "instead providing false SWIFT transaction records to delay the refund" to Momentum. (*Id.* at 4) (emphasis omitted). Momentum alleges that while Kairos initially processed repayment of the $97,200.00, it ultimately "reversed the transaction to avoid making the payment." (*Id.*). Momentum contends it has fulfilled all of its obligations and has duly performed all conditions on its part required under the parties' agreement. (*Id.*).

In its amended Complaint (titled "Original Complaint"), Momentum asserts several causes of action against Defendants: (1) breach of contract; (2) breach of fiduciary duty; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) fraud; and (6) alter ego liability. *See* (Doc. No. 16). Defendants' Motion to Dismiss requests that the Court dismiss several of these claims. *See* (Doc. No. 20).

## LEGAL STANDARD

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To

defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* Additionally, in deciding a motion to dismiss, "the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 379 (5th Cir.2003).

## ANALYSIS

Defendants' Motion argues that Plaintiff's Complaint "relies on completely conclusory allegations and threadbare recitals of causes of action." (Doc. No. 20 at 1). Specifically, Defendants aver that the Complaint (1) "does not allege sufficient facts to hold Aydin individually

3

liable" for any of the causes of action "because it does not specifically identify his conduct;" (2) "fails to plead breach of fiduciary duty because it does not allege sufficient facts to support an inference that a fiduciary duty ever existed;" and (3) does "not contain sufficient facts that satisfy the heightened pleading standard" for fraud, intentional misrepresentation, and negligent misrepresentation. (*Id.* at 1–2). As such, Defendants request that the Court dismiss all claims against Aydin and dismiss the claims for breach of fiduciary duty, fraud, intentional misrepresentation, and negligent misrepresentation against Kairos. (*Id.* at 2).

## I.    Plaintiff's Breach of Contract Claim Against Aydin

First, Defendants assert that Plaintiff has failed to state a claim against Aydin for breach of contract. (*Id.* at 3). Defendants contend that "[i]t is well established that a person is liable for a contract only if he is a party to the contract or an intended third-party beneficiary." (*Id.*). Since Aydin is neither, Defendants argue Plaintiff must pierce the corporate veil to hold Aydin personally liable. Defendants maintain that Plaintiff has not provided facts sufficient to pierce the corporate veil. (*Id.*). Importantly, Defendants do not allege that Plaintiff's breach of contract claim against Kairos should be dismissed.

A bedrock principle of Texas corporate law is that an owner or officer of a corporation is not liable for corporate debts. *See SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 451 n.29 (Tex. 2008) (citing *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006)). Alter ego, however, is "one basis for piercing the corporate veil and disregarding the corporate fiction." *Burchinal v. PJ Trailers-Seminole Mgmt. Co.*, 372 S.W.3d 200, 216–17 (Tex. App.–Texarkana 2012, no pet.). "Generally, alter ego will not apply to disregard the corporate form absent exceptional circumstances." *Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 266 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

4

The Texas Legislature has further limited the ability of a plaintiff to recover under the alter ego theory. Specifically, the Texas Business Organizations Code precludes a shareholder, owner, or affiliate from being liable for "any contractual obligation of the corporation or any matter relating to or arising from the obligation" on the basis that the owner "is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." Tex. Bus. Orgs. Code Ann. § 21.223(a)(2); *see Salvex, Inc. v. Transfair N. Am. Int'l Freight Services, Inc.*, 2020 WL 4676768, at *9 (S.D. Tex. Aug. 12, 2020), report and recommendation adopted, 2020 WL 5235161 (S.D. Tex. Sept. 2, 2020). This statute does not, however, prevent or limit the liability of an owner "if the obligee demonstrates that the [owner] caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit" of the owner. Tex. Bus. Orgs. Code Ann. § 21.223(b).

"In the veil-piercing context, Texas courts have held that 'actual fraud is not equivalent to the tort of fraud.'" *Belliveau v. Barco, Inc.*, 987 F.3d 122, 129 (5th Cir. 2021) (citing *Matter of Ritz*, 832 F.3d 560, 567 (5th Cir. 2016)). Instead, "actual fraud involves 'dishonesty of purpose or intent to deceive.'" *Ritz*, 832 F.3d at 567 (quoting *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010, no pet.)). Since fraud is an element of the alter ego doctrine, "a plaintiff pleading alter ego must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Shadix-Marasco v. Austin Reg'l Clinic P.A.*, 2010 WL 2232804, at *6 (W.D. Tex. June 1, 2010), report and recommendation approved, 2010 WL 11601257 (W.D. Tex. June 16, 2010); *see Debut Sols. LLC v. Axion Structural Innovations, LLC*, 2021 WL 11723751, at *6 (S.D. Tex. Dec. 23, 2021) (same); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

To start, Plaintiff's Complaint asserts that Aydin is the "owner and registered agent of Kairos." (Doc. No. 16 at 2). Defendants do not dispute this. Thus, to hold Aydin liable for Kairos' alleged breach of contract, Plaintiff must sufficiently plead that Aydin used Kairos to (1) "perpetrate an actual fraud" (2) primarily for Aydin's "direct personal benefit." Tex. Bus. Orgs. Code Ann. § 21.223(b). Plaintiff does not sufficiently allege either of these items – in fact, the "Factual Allegations" section of Plaintiff's Complaint does not mention Aydin once. *See* (Doc. No. 16 at 3–4).

Plaintiff contends in its Response that its Complaint "pleads with specificity that Aydin commingled personal and company funds, made false representations to induce Plaintiff's payment, issued fraudulent SWIFT receipts, and reversed a wire transfer after leading Plaintiff to believe repayment had been initiated." (Doc. No. 23 at 6 (citing Doc. No. 16 at ¶¶ 7, 16–21, 50–52)). The Court, however, finds no support for this argument in Plaintiff's actual allegations. Plaintiff's Complaint is devoid of any factual details supporting the conclusory allegations that Aydin commingled funds, made false representations, issued fraudulent receipts, and reversed a wire transfer. [1] Even assuming Plaintiff had pled sufficient facts to support these allegations, they are insufficient to meet the high standard for piercing the corporate veil for a contract claim. *See*

---

[1] The paragraphs of the Complaint cited in Plaintiff's Response do not support Plaintiff's argument. *See* (Doc. No. 16 at ¶ 7) ("Plaintiff is informed and believes, and therefore alleges, that a unity of interest and ownership exists between Kamil Aydin and Kairos . . . . Kamil Aydin commingled his personal funds with those of Kairos, and his representations made under Plaintiff [sic] and Defendant Kairos constitute fraud . . . since he never intended to fulfill the promises under the Agreement."); (*Id.* at ¶ 16–21) (generally asserting that "Defendants" failed "to deliver goods that had already been paid for;" "failed to return the funds, instead providing false SWIFT transaction records to delay the refund;" and "reversed the transaction [for the refund] to avoid making the payment"); (*Id.* at ¶ 50–52) (generally asserting that "Defendants engaged in a deliberate scheme to defraud Plaintiff by misrepresenting the shipment of goods, creating false financial records, and ultimately reversing an attempted refund").

6

*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (Rule 9(b) requires the "who, what, when, where, and how" to be laid out).

Plaintiff's Complaint does not plead sufficient facts to demonstrate that Aydin used Kairos to perpetrate an actual fraud for his own personal benefit. Plaintiff, therefore, has not sufficiently pled its alter ego theory of liability against Aydin for Kairos' alleged breach of contract. Accordingly, Plaintiff's breach of contract claim against Aydin is dismissed.

## II.   Plaintiff's Breach of Fiduciary Duty Claim

Second, Defendants argue for dismissal of Plaintiff's breach of fiduciary duty claim because Plaintiff's Complaint "does not contain sufficient facts to allege the existence of a fiduciary duty." (Doc. No. 20 at 4). Defendants maintain that Plaintiff's Complaint does not explain how a fiduciary duty arose from the parties' alleged "business agreement," or sale of goods, since it does not contain any information about the nature of the alleged agreement. (*Id.* at 5). Further, Defendants contend that Plaintiff's cause of action section regarding this claim reads like a breach of contract claim and a "contract itself is not enough to create a fiduciary duty." (*Id.*).

"The elements of a claim for breach of fiduciary duty are (1) a fiduciary relationship existed between the plaintiff and the defendant, (2) the defendant breached its fiduciary duty, and (3) the breach resulted in injury to the plaintiff or benefit to the defendant." *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 650 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The first step in assessing such a claim is determining whether the defendant owes the plaintiff a fiduciary duty. Under Texas law, a fiduciary duty can arise from a formal or informal relationship. "In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). A fiduciary duty can also arise informally from a "moral, social, domestic or purely personal

7

relationship of trust and confidence." *Id.* at 331 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998)).

Not every relationship, even one involving a high degree of trust and confidence, creates a fiduciary duty. The general rule established by the Supreme Court of Texas is that a contractual obligation does not give rise to a fiduciary duty. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 203 (Tex. 2002); *Nat'l Plan Adm'r, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex.2007). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331 (quoting *Associated Indem. Corp.*, 964 S.W.2d at 287).

To establish the alleged fiduciary duty, Plaintiff claims that "Defendants owed Plaintiff a fiduciary duty by virtue of their business relationship, in which Plaintiff entrusted Defendants with financial resources and relied on Defendants for the proper execution of transactions." (Doc. No. 16 at 5). In its Response, Plaintiff argues it adequately pled a fiduciary relationship because the Complaint alleges that "Plaintiff entrusted Defendants with $97,200.00 for the purpose of procuring and shipping goods" and Plaintiff relied on not only the contract between the parties, but Defendants' "specific representations, repeated assurances, and exercise of unilateral control over the logistics and financial processing." (Doc. No. 23 at 8).

Plaintiff does not allege any preexisting relationship "of trust and confidence" between it and Defendants. *Meyer*, 167 S.W.3d at 331. The only asserted "business relationship" is premised on the parties' alleged "business agreement" whereby Plaintiff paid Defendants for the supply and shipment of goods. *See* (Doc. No. 16 at 3). The relationship between Plaintiff and Defendants is, at best, purely a contractual one. While the Court recognizes that Plaintiff pled that it trusted and

relied on Defendants, "[m]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex.1997)). Instead, to impose such a relationship in a business transaction, there must be a fiduciary relationship "prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331.

Plaintiff has not pled facts to show that an informal fiduciary relationship existed between Plaintiff and Defendants. Since Plaintiff has not pled facts that establish even the first element of its breach of fiduciary duty claim, the claim is dismissed. The Court grants Defendants' Motion regarding Plaintiff's breach of fiduciary duty claim against all Defendants.

### III.   Plaintiff's Fraud and Intentional Misrepresentation Claims

Third, Defendants assert that Plaintiff's claims for fraud and intentional misrepresentation fail because Plaintiff does not plead sufficient facts under the heightened pleading standard for fraud. (Doc. No. 20 at 5–8). Defendants maintain that fraud and intentional misrepresentation "are the same cause of action due to shared elements," meaning the heightened Rule 9(b) pleading standard applies to both claims. (*Id.* at 6). Under this premise, Defendants aver that Plaintiff failed to satisfy the standard by (1) lumping the Defendants together as one "without giving an explanation as to what each specifically did to allegedly commit fraud" or intentional misrepresentation; and (2) only discussing post-transaction conduct and not representations made before or at the time the parties entered the agreement. (*Id.* at 6–8).

The Court agrees with Defendants that Plaintiff's claim for intentional misrepresentation is essentially the same as its fraud claim. *See Weinstock v. Transamerica Inv. Group, Inc.*, 2024 WL 1394511, at *7 (S.D. Tex. Mar. 31, 2024), *appeal dismissed*, 2024 WL 4971958 (5th Cir. June 25, 2024) ("'A claim of intentional misrepresentation has the same elements as a fraud claim[,]'

so the Court's discussion of fraud includes intentional misrepresentation."); *Smith v. Tilton*, 3 S.W.3d 77, 88 (Tex. App.—Dallas 1999, no pet.) ("appellant's claim for intentional misrepresentation is the same as her fraud claim."); *RenCare, Ltd. v. United Med. Res., Inc.*, 180 S.W.3d 160, 166 (Tex. App.—San Antonio 2005, no pet.) (stating that the same elements are required for plaintiff's fraud and intentional misrepresentation claims); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 140 n.5 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) ("Intentional misrepresentation is essentially fraud."). Accordingly, the Court analyzes these claims as one.

"The elements of fraud are (1) a material false representation, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4) that the other party 'actually and justifiably relied upon,' causing him injury." *Garcia v. Vera*, 342 S.W.3d 721, 725 (Tex. App.—El Paso 2011, no pet.) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Additionally, the Federal Rules of Civil Procedure require that allegations of fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The plaintiff must include the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams*, 112 F.3d 175 at 177.

In pleading its intentional misrepresentation claim, Plaintiff asserts that Defendants "made false representations to Plaintiff to induce them to enter into a contract with Defendants, including . . . stating that the goods were en route when they were not and presenting fraudulent SWIFT transaction records to mislead Plaintiff into believing that repayment was underway. (Doc. No. 16 at 5). In its fraud claim, Plaintiff reasserts the same alleged misrepresentations: "Defendant engaged in a deliberate scheme to defraud Plaintiff by misrepresenting the shipment of goods,

10

creating false financial records, and ultimately reversing an attempted refund." (*Id.* at 6). Plaintiff maintains in both claims that Defendants knew these representations were false and made them with an intent that Plaintiff would rely upon them, and that Plaintiff did rely on them and thereby suffered injury. (*Id.* at 5–6).

Notably, Plaintiff's allegations concerning Defendant's misrepresentations all appear to stem from conduct *after* the parties entered into the alleged business agreement. Plaintiff's Complaint asserts that the parties entered into an agreement in March 2024 and *then* Defendants allegedly misrepresented the status of the shipment of the goods and later presented allegedly false financial records. *See* (Doc. No. 16 at 3–4). Defendants' alleged misrepresentations, therefore, could not have induced Plaintiff to enter into the agreement whereby Plaintiff paid Defendants $97,200.00. Plaintiff does not plead any facts indicating that Defendants made any misrepresentations prior to the parties entering into the business agreement. As such, Plaintiff has not pled facts sufficient to prove that Defendants fraudulently induced Plaintiff into paying Defendants for supply and shipment of the goods. At best, Plaintiff pleads that Defendants made misrepresentations after entering into the agreement to delay Plaintiff's discovery of the failed shipment.

Accordingly, Plaintiff has failed to sufficiently plead its fraud and intentional misrepresentation claims. The Court grants Defendant's Motion regarding these claims.

## IV.    Plaintiff's Negligent Misrepresentation Claim

Lastly, Defendants argue that Plaintiff's negligent misrepresentation claim should be dismissed. Defendants maintain that because Plaintiff's negligent misrepresentation claim is substantially intertwined with Plaintiff's fraud claim, Rule 9(b)'s heightened pleading standard applies, and Plaintiff fails to satisfy this standard. *See* (Doc. No. 20 at 8–10).

"Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, [the Fifth Circuit] has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003). "Once a fraud claim is dismissed under Rule 9(b), a claim for negligent misrepresentation based on the same operative facts must also be dismissed unless 'it is possible for the Court to describe a simple redaction that removes allegations of fraud from the complaint, but leaves the plaintiff's valid and intelligible negligent misrepresentation claim intact.'" *Biliouris v. Sundance Resources, Inc.*, 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008) (quoting *American Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F.Supp.2d 744, 752 (N.D.Tex.2005)); *see MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *26 (S.D. Tex. July 24, 2019), *report and recommendation adopted*, 2019 WL 4673209 (S.D. Tex. Sept. 24, 2019); *Nelson v. Ocwen Loan Servicing, LLC*, 2016 WL 7324284, at *6 (S.D. Tex. Nov. 7, 2016), *report and recommendation adopted*, 2016 WL 7242735 (S.D. Tex. Dec. 15, 2016).

In this case, as Defendants allege, Plaintiff's allegations of negligent misrepresentation are "almost identical" to those of its fraud claim. (Doc. No. 20 at 9). First, Plaintiff groups all of its factual allegations (for all six claims) into the same several paragraphs of its Complaint. *See* (Doc. No. 16 at 3–4). For its section focusing on the negligent misrepresentation claim, Plaintiff generally refers to the same asserted facts for its fraud claim: "Defendants, in the course of their business dealings, supplied false information regarding [their] intention to enter into the agreement and ship goods purchased under their agreement, the shipment of goods and the status of financial transactions." (*Id.* at 6). Indeed, in its Response, Plaintiff asserts that Defendants' negligent misrepresentations include "falsely stating that goods were en route, issuing fraudulent SWIFT

12

confirmations, and misrepresenting that a wire transfer refund had been completed." (Doc. No. 23 at 14). These are the *exact same* factual allegations asserted for Plaintiff's fraud claim.

As such, the Court can discern no "separate focus" on negligent misrepresentation that is distinct from those allegations directed at pleading Plaintiff's fraud claim. *Benchmark Elecs., Inc.*, 343 F.3d at 723. Since the Court cannot describe "a simple redaction" that removes the fraud claim while keeping the negligent misrepresentation claim intact, Plaintiff's negligent misrepresentation claim must also be dismissed for failure to state a claim under the Rule 9(b) pleading standard. *Biliouris*, 559 F. Supp. 2d at 737. Accordingly, the Court grants Defendants' Motion regarding Plaintiff's claim for negligent misrepresentation asserted against all Defendants.

That being said, "[w]hen a party has failed to plead with sufficient particularity, the [c]ourt will almost always permit leave to amend to bring the complaint into compliance with the requirements of Rule 9(b)." *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 704 (S.D. Tex. 2004) (citing *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (5th Cir.1981)). Thus, the Court grants Plaintiff leave to amend its Complaint regarding its fraud-based claims (fraud, intentional misrepresentation, and negligent misrepresentation). Defendants' Motion to Dismiss is granted, but Plaintiff is given leave to replead if it does so by April 17, 2026. If it fails to do so, this Court will dismiss the case. If Plaintiff does replead timely, Defendants will have 21 days to respond as they deem appropriate.

## CONCLUSION

Based on the foregoing analysis, the Court **CONDITIONALLY GRANTS** Defendants' Motion to Dismiss. (Doc. No. 20). Plaintiff is granted leave to amend its Complaint as to its fraud-based claims against both Defendants, including fraud, intentional misrepresentation, and negligent misrepresentation, to comply with the specific requirements of Rule 9(b) if it does so by

April 17, 2026. Failure to comply with this deadline will result in dismissal. If an amended complaint is timely filed, Defendants may respond to this new complaint as per the Rules of Civil Procedure. The breach of fiduciary duty claim is dismissed with prejudice.

Signed on this the 23rd day of March 2026.

Andrew S. Hanen
United States District Judge

14